## BISHOP & BABCOCK CO. v. LEVINE.

(Circuit Court, S. D. New York. November 29, 1902.)

1. PATENTS—CONTRIBUTORY INFRINGEMENT—SALE OF UNCOMPLETED ARTICLE.
   One who makes and sells a part of a structure, adapted and intended to be completed by the purchaser, and which when so completed is an infringement of that of a patent, is a contributory infringer, although the uncompleted article as it leaves his hands lacks essential elements of the patented device, and in itself is not an infringement, where, unless so completed, it is not operative and has no commercial value.

2. SAME—LIQUOR CABINET.
   The Berner patent, No. 537,434, for a combination cabinet for liquids on draught, claims 1 and 2 construed, and defendant *held* chargeable with contributory infringement in making and selling the shell of a cabinet adapted to be completed by the insertion and connection of pipes and faucets, and which, on such completion, is substantially the structure of the patent.

In Equity. Suit for infringement of letters patent No. 537,434, for a combination cabinet for liquids on draught, granted April 16, 1895, to H. D. Berner. On final hearing on pleadings and proofs.

Herbert A. Banning, for complainant.
J. L. V. Heinberg, for defendant.

¶ 1. Contributory infringement of patents, see notes to Edison Electric Light Co. v. Peninsular Light, Power & Heat Co., 43 C. C. A. 485.

LACOMBE, Circuit Judge. The specification states that the apparatus is "adapted to be used for drawing mineral waters or liquors of any kind which are under a sufficient pressure to flow through the pipe from beneath upward through the several chambers to the faucets." The pipe (or several pipes, each for a different liquid) passes from the source of supply into a lower cooling chamber, where it coils under ice; thence it passes, at the back, through a cold-air passage, open to upper and lower chamber, into the upper chamber, where it again coils under ice and terminates in faucets at the front of the upper chamber. The cover of the lower chamber is sectional, the front half consisting of a removable drip pan adapted to receive and convey away the drippings from and through a perforated sheet cover serving as a receptacle for cups or glasses, and the rear half is a corrugated or fluted sheet metal top which extends over the front section sufficiently to convey the drippings into the drip pan. Either or both the sections may be removed to fill the lower chamber with ice, or for any other purpose. These parts, as the specification states, "might be modified and yet remain within the spirit of the invention." The claims relied on are:

"1. The cabinet described having the lower chamber and the cover therefor consisting of the drip pan H, and perforated plate K over the same, and the separate removable cover section L along its back portion having the drain plate overlapping the said drip pan, and the upper chamber having the faucets above the said drip pan H, substantially as set forth.

"2. The cabinet described having the chambers A and E and the back portion C connecting said chambers, a series of faucets arranged along the front portion of the chamber E, the drip plate K and associated parts over the front portion of the chamber A, and the cover L having a drainer surface overlapping the said plate K, substantially as set forth."

The past history of the controversy greatly simplifies the issues now to be determined. In November, 1898, suit was brought on the patent against the present defendant, in which, upon his written consent, a decree was entered adjudging the validity of the patent, and that an apparatus which the defendant then made was an infringement. That decree has never been set aside, and the only question now to be determined is whether some modifications which defendant has since made take his apparatus out of the claim of the patent. The manner in which the apparatus is set up for use is as follows: A manufacturer constructs the two cooling chambers, upper and lower, with the connecting cool-air passage, with suitable apparatus for the entrance of pipes and for their exit at the places where the faucets are to be attached, and with drip pan, perforated cover, and corrugated sectional top arranged appropriately to the location where the faucets are to be placed. Defendant's expert appropriately described this as a "shell"; until the pipes are inserted and the faucets affixed it has no commercial utility. It is then turned over to a purchaser, or, as defendant says, "to the plumbers who connect the pipes in the boxes [chambers]." Such a "shell" was held to be an infringement in the first suit.

The only differences which, as defendant himself testified, are to be found in his later apparatus are these: (1) The drip pan is made to slide under the corrugated plate, or rear sectional cover of the

lower box. It is, nevertheless, removable. The sliding may be an improvement, but the drip pan is still within the patent. (2) The drain pipe from the upper chamber connects with the superstructure of the lower chamber, then with the trough from which it enters the waste pipe. But the drain pipe is not an element in either the first or second claim. (3) The corrugated drain plate on the lower box slants or pitches toward the back. In the patent it pitches towards the front; in the former infringing device it was level. The variance seems to be immaterial. (4) The upper ice box or chamber is made removable. This is for the purpose of making it more readily adjustable to the surroundings amid which it is to be placed. When put up, it becomes as stationary as the upper chamber of the patent. Defendant's expert calls these minor differences, as indeed they are. They effect no change of function, and in no wise alter the combination of the first two claims, which are the only ones relied on. The same expert bases his opinion that defendant's structure does not infringe on the absence of pipes and faucets. He says:

"As there are neither pipe coils for cooling liquids by the application of ice thereto, nor faucets to draw the liquids in dispensing the same, I do not find that the defendant's cabinet or structure contains the invention designed to be secured by the patent. * * * It is a mere shell, so to speak, without the means of serving as an apparatus for dispensing liquors on draught. And therefore it is without the ability to perform the offices necessary in a beverage dispensing apparatus."

This proposition is undoubtedly sound. As it leaves defendant's hands, the cabinet is not the completed structure of the patent. It is made and sold, however, adapted to receive pipes and faucets so as to become an operative apparatus; its parts are so arranged that when these are inserted it will be such a structure as the patent described and claims; without this adaptability it could not be sold at all, for it would have no commercial utility. That the defendant knows this, and that he makes and sells his "shell" with the intention that it shall be thus fitted with pipes and faucets, seem entirely clear. He is a contributory infringer under all the authorities, and complainant may take the usual decree.