GENERAL ELECTRIC CO. v. INDEPENDENT ELECTRICAL SUPPLY CO.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

No. 69.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ELECTRIC LAMP SOCKET.

The Sargent patent, No. 665,582, for an electric lamp socket, was not anticipated and discloses patentable invention; also *held* infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Appeal by defendant below from a decree of the District Court for the Southern District of New York holding valid and infringed claims 1, 11, and 15 of United States letters patent No. 665,582, for certain new and useful improvements in lamp sockets, granted to Howard R. Sargent, of Schenectady, N. Y., assignor to the General Electric Company, on January 8, 1901.

Robert B. Killgore, of New York City, and David P. Wolhaupter, of Washington, D. C., for appellant.

Samuel Owen Edmonds, of New York City, for appellee.

Before WARD and ROGERS, Circuit Judges, and VEEDER, District Judge.

VEEDER, District Judge. The patent in suit was before this court last term on the complaint of the present complainant against the American Brass & Copper Company (214 Fed. 380, 131 C. C. A. 282), where the claims then and now in issue are set forth. The same claims were sustained by Judge Cross in the District of New Jersey (190 Fed. 34), and on appeal (191 Fed. 168, 111 C. C. A. 646), in an action against the E. H. Freeman Electric Company, also the makers of the article complained of in the present suit. 

The patent relates to the insulation of the cap of an electric lamp socket to prevent the electric current from flowing through the metallic cap. This is commonly effected by interposing insulating material in the cap of the shell. The difficulty lies in securing the insulating lining in position, owing to the fact that ordinary securing means would pass through the cap and lining and thus defeat the very object for which the lining is interposed. The patent in suit aims to overcome this difficulty by the combination, with a cap having interior retaining means or projections, of a yieldable insulating lining which can be forced or sprung or fitted over such retaining means or projections and held thereby. In the former action this court held that the patent was valid, but that the claims in issue were not infringed

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by a cap having exterior retaining means or projections. In this action the defendant again questions the validity of the patent in suit, upon additional proof of the prior art, and also denies infringement.

With respect to patentable invention, the new facts submitted do not affect the conclusion heretofore reached. In the Bergmann patent, No. 484,580, the metal screws employed as the retaining means pass through a flat metallic cap into the interior of the socket, thereby furnishing a ready path of conductivity for the current to the metallic cap in the event of a short circuit within the socket. The Taylor British patent of 1897, upon which the defendant mainly relies, shows a construction quite different from that of the patent in suit. It is not concerned with the insulation of small, compact lamp sockets, but of large electrical devices, such as enclosures of electrical switches. While the patent states the insulation to be "of 'vitreous' or other non-electricity-conducting material," the material particularly described is vitreous; i. e., earthenware, porcelain, stoneware, or the like. The suggestion of the patent is that this porcelain lining be fitted within the interior of a metallic shell, and secured therein by rolling or turning the bottom edge of the shell over a beading on the porcelain. The difficulty in manufacturing such a structure is obvious. In the exhibit introduced as a commercial embodiment of the invention the porcelain block of insulation is many times the mass of the insulation shown in the patent, and fills up the space between socket and cap. If practicable at all, the fragility of such rigid insulation would preclude its commercial use. The patent discloses no interior retaining means, no projections extending in the interior of the cap. And the metal of the enveloping shell is led into the cap at the very point where the wires enter, with consequent danger of contact.

The proof of infringement is equally plain. In the socket complained of in the Freeman Case the cap was first provided with the interior retaining means by punching in the projections from the outside, and then the lining was sprung past such projections. In the defendant's socket here involved the lining is first positioned within the cap, and the projections punched afterward. The difference is one of method or shop practice, not of structure. The elements of the claims in suit are unmistakably present in the defendant's present structure after the insulating lining is secured in place. They are not all present before the lining is in place, because the defendant does not punch the projections until after the lining has been inserted. The sequence of operations is, however, unimportant, in view of the fact that the claims are drawn, not upon a method of production, but upon the article produced. We agree with Judge Hough in his conclusion that the defendant's socket—

"has 'interior retaining means'; a 'yieldable lining'; the lining can still be 'forced over the retaining means,' though it is no longer desirable to do so, except when repairing; his projections still hold the lining within the cap, and while it is desirable in his last model that the interior projection should register with the indentation of the lining, it is not necessary."

The decree is affirmed.