## JOHNSON et al. v. LAMBERT.

(Circuit Court of Appeals, Second Circuit. May 9, 1916. On Hearing as to Form of Mandate, May 24, 1916.)

### No. 266.

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—GARMENT.

The Johnson patent, No. 973,200, for a union suit garment, claim 1, with proof that an article offered in evidence, but excluded, was in the prior art, *held* void for lack of invention. Claims 2 and 3 *held* not infringed.

2. PATENTS ☞311—SUIT FOR INFRINGEMENT—EVIDENCE.

Where the answer in an infringement suit alleges generally want of invention and novelty in view of the prior art, in the absence of a motion for bill of particulars, an article shown to have been manufactured and on sale prior to the patent may properly be admitted in evidence, although not specifically pleaded.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 541, 542; Dec. Dig. ☞311.]

3. PATENTS ☞36—SUIT FOR INFRINGEMENT—EVIDENCE OF INVENTION—COMMERCIAL SUCCESS.

The effect of commercial success as evidence of invention is lessened, when the commercial article departed from the patent and was in the hands of a concern with a large trade in other articles, which advertised extensively, and the article belonged to a class for which there was an increasing demand.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 40; Dec. Dig. ☞36.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Horace G. Johnson and Henry S. Cooper against M. H. Lambert. Decree for complainants, and defendant appeals. Injunction suspended, and cause remanded, with instructions.

Appeal from a decree holding patent to Johnson, No. 973,200, dated October 18, 1910, valid, and all claims infringed, and awarding to plaintiff the usual injunctive relief, with an accounting.

F. P. Warfield, of New York City, and E. F. Samuels, of Baltimore, Md., for appellant.

L. Gifford and Albert H. Graves, both of New York City, for appellees.

Before WARD and ROGERS, Circuit Judges, and MAYER, District Judge.

MAYER, District Judge. [1] "This invention," Johnson states, "relates to that class of underwear known as union suits, and has for its chief object to provide an improved construction of such garments permitting the use of a permanently closed crotch and dispensing with the use of double flaps, or a single, wide drop-fall or flap, with their numerous fastenings, heretofore used to cover the posterior opening, while at the same time presenting a posterior opening of ample dimensions for its required purpose, covering by a single flap capable

·of being secured by a single button or other fastening. In other words, my present invention is designed to supply a garment combining in its construction the two most essential requisites for comfort and convenience in garments of this character, namely, a permanently closed crotch, and a posterior opening of ample dimensions and convenient location that will not gap to expose the person, and closed by a single flap requiring but a single button or equivalent fastening. * * * From the above it will be seen that my invention provides a garment having a permanently closed crotch and a posterior opening extending from a point near the waistline to a point below the crotch in one leg only. By carrying this opening obliquely from a point substantially in the waist line down to a point on the inner side of the leg below the crotch, I provide a construction affording an opening of ample dimensions and not requiring twisting or lateral displacement of the intermediate portion of the garment when in service."

There are three claims; but, as claims 2 and 3 set forth a detailed specific construction, the real controversy is as to claim 1. That claim reads as follows:

"1. An undergarment having a permanently closed crotch and a posterior opening extending from a point near the waistline to a point below the crotch in one leg only, substantially as described."

If claim 1 is valid, and the contentions of plaintiffs are sound, it is plain that plaintiffs—and in that event, justly—will either dominate the practical art or exercise a major control over it. The subject, therefore, is one of considerable importance.

We agree with the court below that the patent is addressed, as the drawings show and as the specification sets forth, "to that class of underwear known as union suits" and that the word "undergarment," when used in the claims, must be construed as referring to the so-called union suit; but we consider the prior art in respect of detachable or two-piece under-garments as relevant to the question of invention. It must also be noted that the patent is not confined to garments of either sex, and therefore the prior art comprehends garments of both sexes.

The problem, if there was one, was to construct a practical, usable unitary structure to accomplish what Johnson, in his specification, called "the two most essential requisites for comfort and convenience in garments of this character." It appears from the record that union suits were known for many years; Wilson (vice president of plaintiffs' exclusive licensee, Wilson Bros., of Chicago) testifying that he was familiar with men's garments of this kind for 16 or 17 years. Wilson Bros. is a very large (Mr. Wilson thinks the largest) "general men's furnishing house" in the country. This house "started to put out" woven fabric garments about two years before it "started to make them with the so-called closed crotch," and these woven fabric garments were well advertised. What, therefore, the commercial art was looking for was a garment possessing characteristics which would make it a better seller than existing merchandise of this kind, and in the state of the art the room for advance was necessarily limited.

Plaintiffs subdivide the art into five classifications, under each of

which they marshal what they regard as the applicable prior art; but we consider the art as too simple to invite such fine distinctions. With garments made under the Muller British patent 8,766 of 1896, the Cook United States patent 615,632 of 1898, the Rochette British provisional specification 1,343 of 1864, and the Tichy Austrian patent 27,283 of 1907, laid on a table before the man skilled in the art, we think there was so little opportunity for inventive ability that patentability on the record as it now stands is doubtful. We do not confine our references to those just recited. They are merely examples of the prior art, all of which we have regarded as pertinent in arriving at our conclusion. While not authority nor controlling, it is interesting to note in this connection that the Exchequer Court of Canada in Johnson v. Oxford Knitting Company, Limited (January, 1915), in construing this same patent, observed:

"It is admitted that a permanently closed crotch undergarment is old. It is shown by the art that the extension of a flap extending below the crotch to the leg is also old. This is made clear by what is called the Austrian patent to Caroline Tichy, of the 25th of January, 1907."

[2] This brings us to a consideration of Exhibit G for identification, which was excluded by the trial court. This was offered by defendant as a specimen of the so-called Holmes garments. We regard this as a closed crotch garment. To call it otherwise, in considering the prior art, is, we think, again drawing too fine a distinction. With this garment properly in evidence in connection with the other prior art, we think that no invention was needed to devise the particular construction shown in the patent, and hence we are satisfied that claim 1 would be void for lack of patentable novelty. Whether, therefore, this exhibit and the testimony relating to it were correctly excluded, becomes an important question in the case.

Defendant's answer alleged:

"The defendant further avers that said letters patent No. 973,200 is void, because it discloses a garment which is not novel and the production of which did not involve invention, in view of the state of the art relating to this type of garment and similar garments in common use in the United States at and long prior to the date of the alleged invention by Horace G. Johnson, and more than two years prior to his application for patent, and that therefore the said letters patent do not disclose any invention which is patentable, and the production of the patented device does not represent anything more than the skill to be expected of the average workman."

Plaintiffs did not demand a bill of particulars as to the facts to which this allegation related. The testimony as to the Holmes garment, infra, was not offered as evidence of anticipation, and, of course, could not be so received unless pleaded, but was offered primarily to show the prior state of the art, and incidentally to meet plaintiffs' claim that its garment was the first union garment of its kind. Defendant's counsel offered to show by a witness then on the stand that he bought from the Holmes Knitting Company, of Malden, Mass., and sold to one R. P. McLoughlin, of Utica, N. Y., a garment like Exhibit G, that similar garments were considerably traded in from 1900 to 1913, that from 1907 to 1913, as shown by the books of the witness, many such garments were ordered to fill up stock, that the

garment was satisfactory to customers, and that from 1900 the business was successfully increasing in men's closed crotch union suits and spread out into three companies, with a resultant fairly wide distribution throughout the United States. The court refused to admit this testimony, saying:

"I do not regard the announced effort of the defense to prove the production of a closed crotch garment by a manufacturer in Massachusetts and its transmission to a gentleman in Utica, a dealer, for sale, and its actual sale to Mr. McLoughlin—assuming all those things to be true—as properly admissible under these pleadings; and my reason for it is that by no fair construction of the law can such a transaction as that be regarded as anything else but a prior use, and, such prior use not having been pleaded, I will not admit it under the guise of a showing of the state of the art."

We appreciate that in this case, as in other cases, the practical result may be the same, whether the prior use is admitted as an anticipation or on the state of the art; but we think the ruling was contrary to settled authority. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Dunbar v. Myers, 94 U. S. 187, at pages 198, 199, 24 L. Ed. 34; Stevens v. Rodgers Boiler & Burner Co., 186 Fed. 631, at page 637, 108 C. C. A. 495.

We realize that under the present equity rules requiring open trials, occasionally last minute evidence of this kind may result in delay, if the court, in its discretion, deems it proper to allow an adjournment under such circumstances. But, in addition to the disinclination of the equity bar to spring surprise, we think the remedy, from the standpoint of practical procedure, lies within the power of the District Court, for instance, to require bills of particulars on demand, to impose costs where an adjournment is necessitated, or to take such other appropriate steps as it may be advised in order to afford opportunity to meet unexpected prior use testimony, or to discourage such practice if attempted.

It is but fair to state that no such situation was here presented. There was no contention by plaintiffs that they were surprised; for this same evidence had been introduced in a case in another district and circuit between plaintiffs and another defendant, in which trial counsel, who had just been retained in this case, had represented the defendant in the other case.

[3] Finally, plaintiffs point to the great commercial success of their garment as evidence to resolve the doubt as to invention which they must have foreseen would exist in this case. But, though large sales of the commercial garment have been made, it is not a garment strictly embodying the structure of the patent. The commercial garment is of the woven fabric type, with short legs and no sleeves. A knit fabric, because of its elasticity, would probably be practical if manufactured as the patent points out; but, from the experiments we have made with the exhibit dummy, we are satisfied that a woven fabric garment would not be practically operative, and plaintiffs, realizing this, have made some necessary changes to create their commercial woven fabric garment.

Changes with reasonable limits, in many instances, would not affect the probative value of commercial utility; but so many considerations

enter into commercial success in the arts relating to garments that a departure from the patent at once casts doubt upon the influence which the claimed new features have upon the purchasing public. This is peculiarly so in this case where an extensive advertising campaign at the instance of a powerful house, a large influence in the trade, a persistent pursuit of alleged infringers, a garment improved over the patent, and an increased demand for union suits as such, leave one in doubt as to whether commercial success has been attained because of ordinary and familiar business reasons, or by virtue of the alleged advance in the art. Atlas Underwear Co. v. Cooper Underwear Co. (D. C.) 210 Fed. 347.

We conclude that, if Exhibit G for identification is proved to the satisfaction of the court, claim 1 is void, and that claims 2 and 3 are, in any event, not infringed. The case is therefore remanded to the District Court to take proof as to Exhibit G for identification, with instructions to dismiss the bill if prior use of a garment of which Exhibit G for identification is a specimen is proved.

### On Hearing as to Form of Mandate.

PER CURIAM. The injunction is suspended, and the cause remanded to the District Court, with instructions:

(1) To take proof as to whether the Holmes garments like, or substantially like, Defendant's Exhibit G for identification, offered as a specimen of these garments, had been in use or on sale prior to the patent in suit, and

(2) To take such testimony, if any, as it may deem advisable, to explain the construction and mode of operation of Exhibit G or similar garments, and thereupon to return the proofs to this court, with the opinion of the District Court as to (1) and as to (2), if there be any conflict in the testimony as to the manner in which the Exhibit G or similar garments, were actually constructed, and as to the mode of operation of such Exhibit G or similar garments.