## JOHNSON et al. v. LIT BROS., Inc.

(District Court, E. D. Pennsylvania. December 14, 1921.)

1. **Patents ☞328—For improvements in union garments held void for lack of invention.**

    The Johnson patents, No. 973,200, No. 1,281,019, and No. 1,298,346, for improvements in union garments, *held* invalid for lack of invention.

2. **Patents ☞36—Mere commercial success not evidence of invention.**

    Mere commercial success is never a test of invention nor even evidence of its presence, but the recognition by those who deal commercially in what is patented of the claim of the patentee to exclusive ownership has evidential value.

3. **Patents ☞327—On question of validity court, if possible, should follow prior decisions.**

    On the question of validity of a patent a District Court, if able in good conscience to accept them, should follow prior decisions by courts in other circuits or districts, whether of higher or equal authority, to avoid creating a situation in which for the time being the same thing would be lawful in one district and unlawful in another.

In Equity. Suit by Horace G. Johnson and Henry S. Cooper against Lit Bros., Inc. Decree for defendant.

Charles N. Butler and Maurice B. Saul, both of Philadelphia, Pa., for plaintiffs.

Edwin F. Samuels, of Baltimore, Md., George P. Dike, of Boston, Mass., and Francis B. Bracken, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. [1] The ultimate finding is made that letters patent respectively Nos. 973,200, 1,281,019, and 1,298,346, issued to Horace G. Johnson October 18, 1910, October 8, 1918, and March 25, 1919, for improvements in union garments, are invalid for want of invention.

[2] The kind of subject-matter to which these patents relate and the nature of the claims gave no promise other than of a big D and

little d, and a prime and double prime type of argument, and the reading of the claims upon a variety of garments. There was small expectation that such an argument could be made entertaining or even invite attention. Notwithstanding this handicap, it is a high, although deserved, tribute to counsel on both sides that they have made the argument alike helpful and one to which it was a pleasure to listen. Indeed, the argument for the plaintiff was so plausible and forceful as to command attention. It was short, if at all, only in convincing power. Unless, however, we have taken a mistaken view of the legal merits of the case, the task imposed upon counsel of now getting a favorable judgment from a trial court is a hopeless one, because there has already been a finding of invalidity, which this court should follow. Aside from the considerations hereafter stated, which have led us to the conclusion reached, the subject-matter of this claimed invention and the fully occupied field of this special art would each predispose the mind to refuse to find invention. Commercial success is often spoken of as a test (at least in doubtful cases) of invention. It is strongly urged in this case. At the most it can never be more than merely evidence of the presence of invention. None, as before often observed, can ever be sure how much success is due to the arts of the salesman and how much to the inventive merits of what is sold. More than this, mere commercial success is never a test of invention nor even evidence of its presence. The thing that counts is recognition by those who deal commercially in what is patented of the claim of the patentee to exclusive ownership. This has evidential value, precisely as what is asked and what offered in commercial dealings is evidence of commercial value. When the art under consideration is the art of the designer of garments, large sales by no means argue invention. It would be easy for any one to see novelty in feminine apparel, for without at least the pretense and show of novelty few sales would ever be made, but it would require more than the eagle eye to see utility in much of that which is displayed to the public. A fortune awaits the one who knows what it is which determines the demand for special styles in such garments, but failure is sure for him who thinks that inventive merit commands it. If patents were granted for special designs in garments, patentable merit might be found in many of them, for the most that commonly can be said for any make of garment is that it is the special make of the designer. We have time and again remarked that when a person has designed or made anything, or has created a special market for anything, or has discovered a new commercial field to be exploited, there is a proneness to bring forward a very aggressive claim to exclusive proprietorship. The impulse to so do, as also before many times remarked, is so general that it must have its base in a common sense of justice. Because of this there is strong popular support for patent, copyright, and trade-mark laws. The feeling of ownership, however, far outruns these laws. The patent laws have a wholly different base and rest solely upon the policy of the law to promote the progress of science and the useful arts. One kind of merit is just as deserving as another. They may differ but only in degree. One is rewarded with a

monopoly, and the other is not, solely because, for a reason hereafter noted, it is practicable to reward the one, and not the other. The real right of special designs or special makes is the right to protection against, not competition, but unfair competition. The protection which the patent laws, through the remedies given, afford, is just as different from the right of protection against unfair competition as two things can be. The two things are indeed almost, if not quite, opposites. The patent laws give the exclusive right to make, use, or vend the patented thing, no matter how unlike the infringing thing may be made to appear. Unfair competition condemns the making and vending only of what has a fraudulent deceptive resemblance to another make. It does not condemn the making or vending of what is in function and substantial character the same thing if deceptive likeness be absent. Notwithstanding this oppositeness, the two rights are, with strange frequency, confused. It is easy to find unfair competition when one maker puts upon the market the special make of another, for which a special demand has been created. It is not easy to find invention in every mere special make of garment which differs in design from other makes. So far as we have been able to discover, this is what and all the plaintiff has.

The general kind of garments to which these patents relate were in vogue at a time "to which the memory of man runneth not to the contrary," because such garments go back to the time of "broad-fall" breeches. The patents, because of this, relate to improved forms and necessarily to what are really special makes of garments. The patents have already been found to be invalid both in the Second circuit and in the Eastern district of Wisconsin, having been so declared in the case of Johnson et al. v. Lambert, 234 Fed. 886, 148 C. C. A. 484, and the unreported case of Johnson & Cooper v. Browning, King & Co

[3] The opinions of Judges Mayer and Geiger have made any further discussion by us of no moment. We content ourselves, in consequence, with a statement of the general considerations involved. The consideration which may be first named is that we should follow the rulings made. It has been urged upon us that neither of these rulings is authoritative, nor the two more so. This is true only in a very narrow sense. The refusal to follow them means that for the time being the same patent is valid in one district or circuit, but not in others. If courts of the United States administering the same law declare one thing to be lawful in one district and unlawful in another, a situation is created which should be avoided, if possible. Trial courts may easily avoid it (unless conditions are exceptional) by accepting whatever ruling is made, if able, in good conscience, to accept it. Good conscience demands intellectual integrity on the part of judges. Whenever a trial judge cannot accept a ruling (which does not authoritatively control him) made by another court, although of co-ordinate jurisdiction, he cannot, of course, follow it, but, whenever he can accept it, he should do so, and the fact that, if the question had first come before him, he would have ruled otherwise, weighs little. Every consideration, including the wisdom of leaving to appellate courts to reconsider questions determined by other courts in sister districts, commands this.

We are able to accept, and do accept, the finding of invalidity made, and the finding of this court might well rest upon the cited cases alone, which, until overruled by an appellate court, should be followed by this court.

One form of garment known to the trade was of the type of closed crotch union suit with a slit extending (from a point in the line of the backbone of the wearer and well up toward the shoulders) downward to end near the closed crotch. This slit was closed (when not needed) by its edges being extended into overlapping flaps. When the opening was needed, it was brought about by the material of each edge of the slit being drawn away from what we have called the backbone line, by which the opening was made as wide as desired and large enough to serve all purposes of its use. The inevitable effect was to shorten the vertical dimension of the opening slit. This was thought to be a defect in the plan of the garment because it brought discomfort to the wearer. The obvious mode of relief was to provide more slack in the vertical length of the slit. The patentee secured it by ending the slit not at and in the center of the closed crotch, but below it and to one side. This prompted placing it down one leg under the thigh, and the patentee so positioned the end of the slit in the right leg. So far as we can see, he might just as well have selected the other leg. This is all we can find in patentee's major patent. The thought of doing this might well be characterized as "clever" or even "ingenious," as that word is used with more or less inaccuracy in common speech, or any other commending adjective might be applied to it. Was it, however, invention entitling the patentee to the reward of a monopoly which would compel by law the six or more million people who the patentee says wanted to wear a garment of that kind to buy of him or go without?

This record shows that there were numerous variations (including this patentee's with the others) in the make of these garments. Some closed the slit by wide margins or edges on each side; some by a wider left-side margin overlapping the slit toward the right with no right-side margin or widened edge; some having this overlapping flap of one form and some of another; some fastening it in one way and some another; some fasteners were made removable and some permanent; some ended the slit in the seam of the trouser leg; some at varying distances to the right side of the leg; some began the slit opening in line with the backbone, and some started it at varying distances to the right or left; some made the right-hand edge of the overlap a straight line; some a curve, and some put one or more angles in it; some put fasteners at the upper right-hand corner of the flap of the same kind as the fastener at the lower point, and some had them different. The variations were almost without number. Did each one display invention? The strongest practical obstacle to holding that they did is the experience of each in the Patent Office. When the patentee filed his second application (or one of his applications), he admits there were 20 (defendant counts 26) interferences declared. We understand the Patent Office, after holding them under advisement for seven or eight years, allowed every one of them. These were not all the patents, but

only those granted in one batch. The patent laws must be given a working construction. What is the practical result of allowing monopolies of each special make? What is a haberdasher or seamstress to do who is pestered by infringement warnings from this army of patentees? We can readily believe that each of these special makes had a merit of its own. It must, however, be evident that this is not the kind of merit which is rewarded with a monopoly. Skill, knowledge, resourcefulness, capacity, and all good qualities are deserving of praise, and for that matter of reward. They get their reward. Every man owes something to his profession, trade, or avocation. He owes it because he is the beneficiary of other contributors. He cannot be rewarded, however, with a monopoly unless he has invented something. The distinction is not only real, but is made by the law for a very practical reason. Inventors are few; skilled designers, artisans, mechanics, and workmen are many. The few may be given monopolies, whether very deserving or not; the many cannot be granted monopolies no matter how meritorious their craftsmanship. An all sufficient argument against the validity of these patents is afforded by the fact that there is not sufficient standing room in this art for all who have overcrowded it with demands for the right to monopolize it.

We have been referred to the case of Globe Knitting Works v. Segal, 248 Fed. 495, 160 C. C. A. 505, as an authoritative support for these patents. If the ruling there made applies, these patents are without doubt valid. Does the ruling there made direct the ruling to be here made? We do not so read that case. The ruling of the trial court in that case was clearly based upon a finding of invalidity because, in the view of that court, all the patentee had there done was to substitute one material for another. It is true a finding of invalidity was sidestepped as unnecessary to be made because the defendant, not having used the same material as the patentee, was not an infringer. The Court of Appeals found that the patentee had done more than merely exchange the material of the prior art for another kind of material. It followed that the finding of infringement should be reversed. We see nothing in that ruling to affect the ruling to be made in the instant case.

The bill filed is accordingly dismissed, with costs, for want of equity. The plaintiff, having no valid patents, has no exclusive property upon which the defendant could be trespassing and no equity upon which to base its prayers for relief.