### JOHNSON et al. v. LIT BROS., Inc. (two cases).

(Circuit Court of Appeals, Third Circuit. October 4, 1922.)

#### Nos. 2844, 2845.

Patents ⊕⇒328—973,200, 1,281,019, and 1,298,346, for improvements in union suit, held void for lack of invention.

The Johnson and Cooper patents, No. 973,200, for a union suit with a permanently closed crotch and posterior opening covered by a flap, with a single fastening extending from a point near the waistline to a point below the crotch in one leg only, and No. 1,281,019, and Johnson patent, No. 1,298,346, for modifications of the patented garment, held void for want of invention in view of the prior art.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Two suits by Horace G. Johnson and another against Lit Bros., Inc. From decrees for defendant (278 Fed. 279), plaintiffs appeal. Affirmed.

Charles N. Butler and Maurice Bower Saul, both of Philadelphia, Pa., for appellants.

Francis B. Bracken, of Philadelphia, Pa., Edwin F. Samuels, of Baltimore, Md., and George P. Dike, of Boston, Mass., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal from decrees in two suits tried together of the District Court holding invalid the following three patents: No. 973,200, issued October 18, 1910; No. 1,281,019, issued October 8, 1918; and No. 1,298,346, issued March 25, 1919. The first two were issued to Horace G. Johnson and to Henry S. Cooper, to whom Johnson assigned one-half interest between the date of application and issue. The third one was issued to Johnson,

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

who afterward assigned one-half interest therein to Cooper. The defendant conducts a large department store in Philadelphia, and although it was alleged in the bill that defendant had infringed the letters patent "by making, using and selling * * * garments respectively embodying the improvements described and claimed in each of said letters patent," as a matter of fact, it only sells garments alleged to embody improvements claimed in the patents.

The first patent, No. 973,200, embodies the fundamental idea of Johnson, and it will be first considered. The patent relates to improvements in underwear known as union suits and has for its object a permanently closed crotch and a posterior opening, covered by a flap secured by a single button or equivalent fastening, extending from a point near the waistline down to a point below the crotch in one leg only. These two elements are embraced in the first and only claim in issue.

We agree with the conclusion of the Circuit Court of Appeals for the Second Circuit (234 Fed. 886, 148 C. C. A. 484); that, while the patent relates to union suits, two-pieced garments worn by either sex are relevant in the prior art in determining invention. The two elements in the claim are the closed crotch and posterior opening. Both of these elements are old in the prior art. The closed crotch is disclosed in patent No. 529,493, issued to Holmes, November 20, 1894; patent No. 642,227, issued to Hill January 30, 1900; British patent No. 19,408, issued to Anderson October 15, 1892; patent No. 705,070, issued to Graham July 22, 1902; Austrian patent No. 27,283, issued January 25, 1907, to Karoline Tichy.

Garments with posterior openings extending from a point near the waistline to a point below the crotch in one leg only are disclosed in the patents to Anderson and Tichy, supra.

These two elements, the patentee says, are essential requisites for comfort and convenience. Fashion and mode of dress is an ever-changing art. Some of these changes produce comfort and convenience and others discomfort and inconvenience. In many of the multifarious designs no pretense whatever of invention can be made, though they may in a sense be novel and unique. The District Judge said:

"It would be easy for any one to see novelty in feminine apparel, * * * but it would require more than the eagle eye to see utility in much of that which is displayed to the public." 278 Fed. 279.

With a knowledge of the prior art, with which the patentee is charged, it would require nothing more that the ideas and mechanical skill of the ordinary designer to produce the garment of Johnson's first patent embodying the closed crotch and posterior opening extending from a point below the waistline to a point below the crotch in one leg only, for both elements are old, and the combination of them in this ever-changing art is only illustrative of what is taking place every day in the world of fashion. Moreover, these two elements seem to have been combined before the Johnson patent in the patent of Anderson. We agree with Judge Mayer of the Second Circuit Court of Appeals that—

"With garments made under Muller British patent, 8,766 of 1896, the Cook United States patent, 615,632 of 1898, the Rochette British provisional specification, 1,343 of 1864, and the Tichy Austrian patent, 27,283 of 1907 laid on a table before the man skilled in the art, we think there was so little opportunity for inventive ability that patentability on the record as it now stands is doubtful."

At most, Johnson simply took the well-known closed crotch and combined with it the Tichy opening in the leg. This was done just after the invention of the tubular knitting machine, and this fact, together with the advent of "athletic goods" and B. V. D.'s largely accounts for the commercial success of the general class of goods of which those made according to the Johnson patent is a type.

The second patent, No. 1,281,019, adds certain details, shown by experience to be desirable, to the closed crotch and posterior opening of the first. It dispenses with any "detachable fastening whatever at the waistline or in the vicinity of the crotch." Fullness in the hip and thigh regions and at the posterior opening are secured in this patent by the insertion of a "seat piece," "the lower angles of which form a pair of thigh gore extensions," and the lower portion "forms a closed crotch." The fact that in the 26 interferences declared and allowed by the Patent Office claim in each was made for the alleged invention disclosed by Johnson would indicate that the device did not involve invention at all, but the mere mechanical skill of the designer. Referring to these interferences, Judge Dickinson said:

"These were not all the patents, but only those granted in one batch. The patent laws must be given a working construction. What is the practical result of allowing monopolies of each special make? What is a haberdasher or seamstress to do who is pestered by infringement warnings from this army of patentees? We can readily believe that each of these special makes had a merit of its own. It must, however, be evident that this is not the kind of merit which is rewarded with a monopoly."

The changes, detail, and amplification in the second patent are the natural development resulting from experience. Garments made from tubular woven material would be tight in the seat, around the thighs, and closed crotch. This tightness could not be but experienced by every wearer, and the insertion of the "seat piece," part of which formed the thigh gores and part the closed crotch, "providing ample width in the hip and thigh regions, and also providing a posterior opening large enough to be practical and simple to manipulate," was not only the natural, but the inevitable, result as shown by the score or more of interferences. Practically every maker of union suits from tubular woven material was trying to overcome and was overcoming the misfits and inconveniences which Johnson overcame in his second patent.

In the third Johnson patent, No. 1,298,346, the basic idea underlying the other two patents of a closed crotch and posterior opening extending from a point below the waistline to a point below the crotch in one leg only is preserved. This patent modifies the opening by covering it with "inner and outer lapping parts," the free margins of which extend "to one leg only substantially below the apex of the crotch and from permanently attached points in the back above the seat to

permanently attached points at substantially the inseam of said leg." These inner and outer lappings closing the opening may be desirable improvements, but they contain no patentable invention over the disclosures of the other two. They are simply the modification and extension by the skill of a designer of the flaps disclosed in his prior patents and in the patents issued to Holmes, Hill, and others. The changes do not rise to the height of inventive genius, and the decree of the District Court is accordingly affirmed.