ROCHESTER COACH-LACE CO. *v.* SCHAEFER *et al.*

*(Circuit Court, N. D. New York.* May 11, 1891.)

PATENTS FOR INVENTIONS—NOVELTY.

Letters patent issued May 9, 1876, to Oscar Boehme, for improvement in the manufacture of balls and rosettes of yarn, consisting in the use of a funnel-shaped tube through which the yarn is drawn, so that it comes out of the small end in a compressed condition, ready to be bound and cut, are void for want of patentable novelty.

In Equity.

*Hey & Wilkinson*, for complainant.

*Fred. F. Church*, for defendants.

COXE, J. This is an action in equity for the infringement of letters patent granted to Oscar Boehme, May 9, 1876, for an improvement in

the manufacture of balls and rosettes of yarn. The patent has, by mesne assignments, been transferred to the complainant. · The object of the patentee was to facilitate the manufacture, in ornamental designs, of balls, tufts and rosettes of yarn. These are produced by tightly binding, at intervals, a mass of threads which are cut between the points where they are bound; the ends thus released spreading out in spherical form. The patentee states that prior to his invention this binding was effected while the skein of yarn was held in the hands of the operator, and that balls so made were ragged in appearance and required subsequent trimming. This difficulty he obviates by means of a funnel-shaped tube, into the flaring end of which the yarn enters and from the contracted end of which it is firmly and evenly delivered in a proper condition for being bound and cut. When the skein is cut at a point close to the binding, the expansion of the threads being confined to one side only, will produce half of a ball, or a rosette or tuft. The claim involved is in the following words:

"(1) As an improvement in the manufacture of balls, tufts, or rosettes of yarn, the mode described of first condensing the threads, and then binding and severing the same, as set forth."

The defenses are non-infringement and that the patent is void for lack of novelty and invention. It is well to remember in considering the questions involved that we are dealing only with the mode of manufacture described in the first claim. It is clearly erroneous to attribute all the improvements which have since been made in the business of manufacturing tufts to Boehme's contribution to the art. The specification and drawings describe a reed-plate, the object of which is to produce ornamental designs in the balls or tufts. The second claim covers the reed-plate in combination with the condensing-tube. Concededly, the reed-plate was old and is no part of the first claim. And yet the witnesses speak of the advantages growing out of the use of the reed-plate as belonging to the invention in question. Again, the process of the first claim is alluded to as including the manufacture of tufts by the compression of the yarn to such an extent that it is practically as solid as a piece of board, so that the ends can be grasped and retained by the flanges of a metal button back. There is nothing of this in the patent. The manufacture of tufts by clamping a metallic button back to the yarn, solid or otherwise, is nowhere alluded to. The only described method of holding the yarn is by tying it with a cord. That the patentee did not contemplate the degree of pressure which is now asserted to be due to the action of the tube, is quite clearly demonstrated by the drawings, where the simple pressure exerted by tying a cord around the yarn is evidently much greater than that to which it is subjected in the tube as indicated by the decreased diameter under the binding cord. A string tied ever so tightly around a piece of "pine board" would hardly produce such a depression. Neither is it correct to speak of the successive acts described in the first claim as a new "process" invented by Boehme, for the reason that, concededly, every step had been taken, although, perhaps, in a comparatively crude and bungling way, long prior to the patent. Before 1876 hanks of yarn had been held tightly, bound at in-

tervals and cut between the bindings. The patentee only describes an improvement upon an old process.

The foregoing are some of the misapprehensions which have found their way into the testimony. Eliminating, then, what the patentee did not do, and confining the attention to what he did do, it becomes important to examine the claim in question. It is a claim for an improvement in the manufacture of balls and tufts. Three steps are described: *First*, compressing the yarn by passing it through a funnel-shaped tube of any suitable material; *second*, binding the yarn after it emerges from the small end of the tube; and, *third*, cutting it between the bindings. It is obvious that the only improvement over the former primitive mode is found in the use of the funnel-shaped tube. The yarn had previously been held by a hand of flesh and blood. Boehme, assuming that he was the first to do it, substituted a hand of wood or metal. Undoubtedly its introduction into this art was an improvement. It produced no new product but it produced an old product in a better way. It might be said that the use of a convenient apparatus for holding the yarn tightly compressed while it is being tied would be obvious to the skilled mechanic, and that evidence in support of the proposition may be drawn from this record, where it appears that an idea very similar did actually occur, at different times and places, to boys and sewing women. It may, however, be assumed for the purposes of the present inquiry, that the first introduction of a condensing-tube to the art involved invention. Was Boheme the first to use the tube? Two prior patents granted to J. Rinek for improvements in making rope show a condensing-tube and one of these patents shows a condensing-tube in combination with a reed-plate, similar to the reed-plate of the patent in hand. The rope passes through this tube and the strands are thus compressed and made uniform in diameter. The Rinek patents do not anticipate, because they deal with strands of hemp instead of threads of yarn, and because there is no binding and cutting of the rope. But when it is remembered that the successive steps of holding, binding and cutting yarn were old, and that condensing-tubes were old, the question arises whether the palm of invention can be awarded to the tuft maker who passed his yarn through an old device used for similar purposes in an analogous art. A person who, in 1875, removed the strands of hemp from Rinek's tube and inserted a hank of yarn instead, and then tied and severed the yarn between the bindings, would have adopted the precise method of the Boehme patent. On the other hand, Boehme's tube could be substituted for Rinek's tube in the latter's structure and produce the same results. That the two are substantially the same is not disputed, and that they perform similar functions is unquestionably established. In view of what was known in the manufacture of balls and tufts prior to the patent it cannot be said that Boehme contributed any patentable improvement to the art by taking a hemp condensing-tube and using it thereafter as a yarn condensing-tube.

But, irrespective of these views, unless the court is to reject arbitrarily the evidence of several uncontradicted witnesses, the method described in the first claim was employed in at least two instances prior to the pat-

cut and in one instance as early as 1859. No reason is perceived why the court should not credit these witnesses. If we were dealing with a complicated machine or an abstruse and difficult process there would be reason to say that persons unskilled in the art might easily be mistaken in describing minute details. But here we have to do with the simplest possible contrivance,—an ordinary spool with some threads of yarn run through it. A person of average intelligence who had actually made balls of yarn by this method could hardly be mistaken about the use of the spool. There is nothing improbable in the story of these witnesses. No motive for perjury is suggested and no discrepancies which discredit the testimony upon the principal points are pointed out.

It does not avail the complainant to prove that the Shaefer, Warner and Burt methods do not anticipate the claim in controversy. It is thought that, upon the construction of the claim contended for by the complainant, it is anticipated by the Burt and Warner prior uses, but concede that it is not; it is certainly void for lack of invention. If the witnesses referred to, used a tube at all for the purpose of condensing the yarn and then tied and cut the yarn between the bindings, whether the tube was the hole through a spool or through an upright board, no room was left for invention by the substitution of the tube of the patent. If a spool were used in the manner described by the witnesses it is the end of complainant's patent. That it was so used there can be no reasonable doubt.

It is unnecessary to consider the question of infringement. It may, however, be said that in view of what was and was not known prior to the patent, and in view of the construction which in any event must be given the claim, it seems at least exceedingly doubtful whether the method adopted by the defendants of clamping a metallic button back onto the end of the mass of yarn and then cutting the yarn to form a tuft, is the method described in the claim. The bill is dismissed.