UNION BISCUIT CO. et al. v. PETERS.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1903.)

No. 1,904.

1. PATENTS—PATENTABLE NOVELTY—PACKAGE FOR BISCUITS.

The Peters patent, No. 621,974, for a method of and means for packing biscuit, crackers, or the like, which consists of placing upon a carton blank of any suitable shape a sheet of waxed or paraffined paper and folding the two together in completing the carton, so that the ends of the two sheets are interfolded, the purpose being to more effectually exclude dust or moisture, is void for lack of patentable novelty, in view of the prior art, which disclosed both the cartons and the paraffined linings.

2. SAME—EVIDENCE OF INVENTION—UTILITY.

The utility of a device is not in itself evidence of patentable invention; although it is entitled to weight when that question is doubtful.

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

For opinion below, see 120 Fed. 679.

This action was brought by Frank M. Peters, the appellee, against the Union Biscuit Company, Adolph E. Winkelmeyer, and Hartwell B. Grubbs, the appellants, to restrain an alleged violation of letters patent No. 621,974, issued March 28, 1899, to Frank M. Peters, the complainant below and the appellee in this court.

The nature of the invention is fully disclosed by the following excerpts from the specifications. Relative to the general objects of the invention, the patentee says:

"This invention relates to an improved method of and means for packing biscuits, crackers, and other articles, and has for its object to provide an inexpensive package whereby bakery goods of this description may be kept fresh and in proper condition for consumption by effectually excluding moisture therefrom, and whereby the goods will be firmly packed and held and thereby prevented from rattling and breaking in the package.

"Heretofore substantially air-tight and moisture-proof metallic cases or boxes have been employed for the purpose of preserving the freshness of biscuit or the like; but the use of these cases involves considerable expense, and they have only been employed in conjunction with the highest priced goods, their cost being too great to permit their use with less expensive goods. It has been customary heretofore to pack these less expensive goods in cartons or paper boxes, and in some cases these cartons or boxes have been provided with a lining of what is known as 'waxed' or 'paraffined paper'; but in such packages as heretofore constructed this lining has not been so disposed as to close the openings or folds of the box, and has itself presented openings through which the moisture has had direct access to the contents of the package. By reason of these facts such comparatively inexpensive packages have failed to protect the goods from moisture, and they have quickly lost their freshness.

"It is the primary object of my invention to obviate these difficulties, and to provide a package which, at an expense practically no greater than that of the ordinary lined carton package, will effectually protect the goods and preserve their freshness.

"A further object is to provide a package of this character which in its assembling or making up will be tightly drawn around the goods, and will therefore firmly hold the same, and prevent looseness and consequent breakage."

¶ 2. See Patents, vol. 38, Cent. Dig. § 39.

Relative to the method of constructing the patented device or box, the patentee says:

"In carrying out my invention I provide a blank of pasteboard, strawboard, or other sheet material of sufficient thickness and strength to properly protect the contents of the box or carton made from such blank. (See figure 1.) This blank may be of any suitable form which is adapted for the purpose of being folded up into a box or carton, and is provided with overlapping ends, which are folded over and interlocked with each other to form the ends of the box. In connection with such a blank I employ a sheet of thin flexible paper, preferably a moisture and grease proof paper, such as what is known as 'waxed' or 'paraffined' paper, and which is thin and flexible, yet strong. (See figure 2.) This sheet is of a width equal to the width of the blank and of a length at least equal to the length of the body of the blank plus the width of the top of the completed box or carton, and, since the tuck-flap of the blank is usually about equal to this surplus width, the sheet may be said

*Fig. 1.*

to be substantially equal both in width and length to the extreme corresponding dimensions of the blank. The sheet is laid upon the blank, and the two, both sheet and blank, are then folded around the crackers, the lining sheet being next to the crackers and being folded along with the blank, its lateral edges being thereby interfolded into the spaces between the end flaps of the box, while its front and back edges are folded over the crackers and over each other, and firmly held in place by the top and tuck flaps of the box. By this method of production a package is formed in which the crackers or biscuit are inclosed in a complete protective envelope of paper without any direct openings through which air or moisture may have access to the contents of the package, and are further inclosed in a paper box or carton, with the ends of which the protective envelope is so interfolded as to effectually close these ends and at the same time prevent any movement of the lining relatively to the box or carton. Moreover, in this folding of the two parts, to wit, the blank and the sheet of lining, around the crackers, the lining is

drawn tightly around these latter and held in that position, so as to firmly hold the crackers together and prevent relative movement and consequent breakage of these latter.

"I will now proceed to describe a package embodying my invention in one form and the method of making the same, it being understood that the particular form of blank set forth is employed merely for purposes of illustration, and that any other well-known form of blank adapted to be folded to form a box or carton by the overlapping and interlocking of its parts may be employed."

After describing the method of folding the carton and superimposed sheet of paraffined paper so as to form the box, the patentee says:

"The resulting package is one in which the crackers are completely enveloped and inclosed in a protective envelope of paper, preferably waxed or paraffined paper, which is moisture-proof and grease-proof, without any open-

ings which may gap and admit moist air to the contents; and this envelope is interfolded with the various flaps and sections of the paper box or carton, within which it and the crackers are inclosed in such a manner that the interfolded portions of the lining sheet close the spaces between the flaps of the box or carton and more effectually protect the contents thereof, while at the same time both the lining sheet and box or carton are so interfolded as to form, in effect, a unitary structure, it being impossible for the lining to move relatively to the box or carton, and the two holding the crackers firmly in place and preventing movement and consequent breakage of these latter."

For the purpose of indicating clearly that the patentee does not desire to confine his claims to the particular kind of box described in his specifications, he says:

"As already stated, the particular form of box-blank shown is chosen merely for purposes of illustration, and other well-known forms of folding box-blanks may be employed in its stead. Moreover, even with the particular form of blank shown, the precise order of folding in the several parts may be varied, it being only essential for the purposes of my invention that the lining sheet shall be folded along with the blank and interfolded with the parts of this latter. If it be deemed desirable, the lining sheet may be secured to the box-blank before folding by means of a suitable paste applied between the two along such lines or at such places as may be deemed necessary.

"While I have described my improved package and method of making same as applied more particularly to the packing of biscuit, crackers, or the like, it is obvious that the same package and method may be employed for other articles—as, for instance, lard and similar compounds—and in such a case the character of the protective lining of paper will vary according to the character of the article to be protected, being either moisture-proof or moisture and grease proof, or having other characteristics, such as the circumstances may require. In the case where the package is used for crackers or other similar bakery goods, a moisture and grease proof lining is desirable, and for this purpose, as well as for general use, I prefer to employ what is known as 'waxed' or 'paraffined' paper, which is both moisture and grease proof, although any equivalent paper adapted to be folded in the manner set forth may be substituted therefor."

The patentee claims as his invention:

"(1) The herein-described method of packing biscuit, crackers or the like, which consists in completely enveloping the same in an uncut or continuous lining or protective sheet and an outer sheet or blank of heavier but flexible material provided with marginal flaps, by superposing the lining or protective sheet upon the blank and then simultaneously folding both said sheet and said blank by the aid of a suitable former into the form of a box or carton, overlapping and tucking said flaps during said folding and thereby interfolding the marginal portions of the lining or protective sheet with the flaps of the blank and securing the flaps to hold the package closed, substantially as described.

"(2) The herein-described box or carton for crackers, biscuit or the like, comprising an internal lining composed of a sheet of protective paper completely enveloping the contents, and an outer sheet of heavier but flexible material having overlapping and interlocking flaps with which the marginal portions of the lining sheet are interfolded, substantially as described.

"(3) The herein-described box or carton for biscuit, crackers or the like, comprising an internal protective lining composed of a single continuous or unbroken sheet of material such as waxed paper and an external covering of heavier but flexible material suitably cut and scored to provide overlapping and tucking flaps, said sheets being adapted to be simultaneously folded while one is superposed upon the other and said flaps being overlapped and tucked and the marginal portions of the lining interfolded therewith and the package thereby secured without extraneous fastening means or perforating the lining, substantially as described.

"(4) The herein-described box or carton comprising an internal protective lining composed of a single continuous or unbroken sheet of material, such as waxed paper, and an external covering of heavier material suitably cut and scored to provide overlapping and tucking flaps, and said lining sheet being of such dimensions as to provide a top fold adapted when folded to afford a triangular flap of greater length than the width of the box, and to be engaged by the top flap of the external covering and pass therewith into the space between the edges of the front of the covering and the lining sheet, said flaps being overlapped and tucked and the marginal portions of the lining interfolded therewith, and the package thereby secured without extraneous fastening means or perforating the lining, substantially as described."

The trial below resulted in a decree in favor of the complainant, and the defendants have brought the case to this court on appeal.

Paul Bakewell (Frederick R. Cornwall, Dorsey A. Jamison, and Nelson Thomas, on the brief), for appellants.

C. K. Offield and Edmund Wetmore (Charles C. Linthicum, F. W. Lehmann, and Earl D. Babst, on the brief), for appellee.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The principal question that arises in this case, and the only one which we have found it necessary to consider, is whether the inventive faculty was exercised in the construction of the paper box or carton which is described in the Peters patent, and is claimed as a product in the second, third, and fourth claims of that patent, and as a method of packing crackers in the first claim. This question, as a matter of course, must be determined upon a full consideration of the state of the art to which the patent in suit appertains and in the light of the well-established doctrine that the patent itself creates a presumption of patentable novelty, which must be fully overcome by the appellant before it can be adjudged invalid.

The specification of the Peters patent contains a general admission that prior to its issuance paper boxes or cartons, as they are sometimes termed, had been used to pack crackers and biscuits and other like articles; also the admission that in some instances such cartons had been provided with a lining of waxed or paraffined paper to pretect the inclosed article from dampness. It is said in the specification, however, in substance, that heretofore the lining of such cartons had not been so disposed as to fully exclude moisture, and the chief object of the patentee seems to have been to so construct a paper box with a lining of wax paper that it would more effectually exclude dampness and dust. A merely cursory examination of the art shows that this was a necessary admission on the part of the patentee. Paper boxes had been made and were in use for the purpose of holding and carrying crackers, berries, candy, ice cream, lard, butter, and a great variety of other articles long before the date of the Peters invention, and many patents describing a method of constructing such boxes had been granted. Indeed, so common has the use of paper boxes become that, without resorting to patents or other printed documents, this court would be justified, by its every-day experience, in taking judicial notice of the fact that paper boxes, both lined and unlined, were in common use for at least 10 or 15 years prior to the date of the patent in suit. As a general rule, such boxes were made in substantially the same way; that is to say, by taking thick heavy paper, either pasteboard or strawboard, and cutting it into such a shape that when folded along certain lines a box of a certain desired shape would be formed. The boxes were either left open at the top, or were provided with an overlapping cover, or were entirely closed. Very frequently the paper which was used to construct such boxes was cut so as to have angular or curved flaps which, in the

process of folding, were inserted in slits cut in the side or top of the box so as to hold it together. On the trial of this case in the lower court a large number of patents were offered in evidence for the purpose of showing the state of the art in question and establishing the fact that very many persons had described methods of making paper boxes long before the date of the Peters patent, and that, as a rule, the processes so described were very much alike, and substantially as last above described; the only differences in the processes being that the paper out of which the boxes were made was cut at times in a different form, so as to produce boxes of a different shape, which would be best adapted to the uses to which they were to be put. For the purpose of showing that the art of making paper boxes was old and well understood when the Peters patent was issued, it is only necessary, we think, to refer to the following patents by name and number, without describing them in detail: United States letters patent No. 164,099, dated June 8, 1875, issued to James L. Moore; United States letters patent No. 183,950, dated October 31, 1876, issued to Charles L. Lockwood; United States letters patent No. 268,311, dated November 28, 1882, issued to Hugh R. Stewart; United States letters patent No. 285,456, dated September 25, 1883, issued to August Brehmer; United States letters patent No. 556,675, dated March 17, 1896, issued to W. B. Howe; and United States letters patent No. 511,080, dated December 19, 1893, issued to W. B. Howe and F. B. Davidson. An examination of these patents has satisfied us that when Peters entered the field as an inventor it was well known to those familiar with the art of making paper boxes that they could be produced in any desired form by simply cutting the paper out of which the box was to be made in a certain way and with the necessary flaps and slits, before it was folded.

Other patents, which the record contains, show with equal certainty that Peters was not the first person to suggest the idea of lining paper boxes with waxed or paraffined paper, or with any other kind of paper, for the purpose of more effectually excluding moisture. This idea was suggested by Smith as early as May 9, 1882. Vide United States letters patent No. 257,522; by Albert, United States letters patent No. 355,496, issued January 4, 1887; by Bower, United States letters patent No. 232,930, issued October 5, 1880; by Munson, United States letters patent No. 288,255, issued November 13, 1883; and by some others. The conclusion, therefore, is inevitable that when the patent in suit was applied for the art to which it appertained had reached a high state of development, and that, because it was a very simple art, little, if anything, remained to be done to perfect it. Paper cartons in many forms had already been made and applied to a great variety of uses. They had been made with a lining and without a lining, depending generally upon the use to which they were to be applied; and, when lined, the lining had sometimes been stuffed in after the box was formed, as shown by the Smith patent, No. 257,522, while in other instances the lining had been pasted in places to the outer covering, so as to be folded with it integrally in the process of making the box, as shown in the Albert patent, No. 355,496.

In view of what has been said, it is difficult to understand in what respect the Peters specification discloses patentable novelty, whether we consider the described method of making paper boxes claimed in the first claim or the product of the process. Novelty does not reside in the manner of cutting the pasteboard or strawboard blank out of which the box is formed, because the patentee himself says that the blank so cut "may be of any suitable form which is adapted for the purpose of being folded up into a box or carton and is provided with overlapping ends." Besides, it was a well-known fact, when the patent in suit was issued, that cartons of any desired shape could be made if a little attention was given to cutting the blank before folding. Nor does the novelty of the device consist in providing cartons with a lining of any sort, because cartons with linings were in common use long prior to the date of the application for the patent. If we correctly understood learned counsel for the appellee, it was frankly conceded on the oral argument that, if what Peters accomplished rises to the dignity of an invention, it is because he was the first to suggest the idea of laying a sheet of waxed or paraffined paper on top of the blank carton and folding them together so as to form a unitary structure. This method of making a carton, it was said, was of great importance, because it had the effect of interfolding the ends of the two protective envelopes in such a way as to more "effectually close these ends, and at the same time prevent any movement of the lining relatively to the box," and because more dampness and dirt was thereby excluded from the inclosed article. Did this suggestion involve the exercise of the faculty of invention? We think not. In the first place, the idea of placing the lining sheet on top of the blank carton, and folding the two together was not new, but was disclosed by United States letters patent No. 355,496, issued to Albert on January 4, 1887. That patent covers a paper box for carrying fruit, oysters, and other like articles. The box was made water-tight by pasting a sheet of thin manilla paper on top of the blank carton and folding the two at the same time so as to form the walls of the box integrally out of the two sheets. The patentee of this box pointed out as one of its chief merits that when a box was thus constructed the lining could not be torn out or displaced. Again, in a patent granted to Cooke on December 3, 1895 (United States letters patent No. 550,-870), a paper box for shipping currency is fully described, which was constructed by placing the blank carton on top of a sheet of wrapping paper and pasting the two sheets together at the place where they united to form the bottom of the box. The patentee of that box also suggested that the two sheets might be pasted together where they united to form one side of the box. The carton was then folded in the ordinary way, to form the box, and after it was formed by inserting the flaps in the appropriate slits, the wrapping paper at the sides and ends was folded around it in the ordinary way to serve as an outer covering. One of the appellants' experts on the trial expressed the opinion, in which we fully concur, that, if the process of constructing a box which Cooke described was reversed by placing the wrapper on top of the blank carton, and then folding the two together to form a box, the result would be a carton for packing crackers that would

exclude moisture and dirt as effectually as the Peters box. The examiner of the Patent office to whom Peters' application for a patent was first submitted also called attention to the Cooke patent, and in rejecting the application made the following statement in which we fully concur: "It would not involve invention to place the wrapper on the inside of the box instead of the outside."

But, aside from the foregoing view of the case, the sole object which Peters seems to have had in view in folding the lining and the blank carton together was to more effectually close the ends of the box so as to exclude more dirt and moisture. Let it be assumed that this object was attained, or was attained to some extent, and yet it does not appear, we think, that the method of folding thus suggested was new, or was so far new as to amount to invention. It was substantially the same method of folding two sheets of paper which grocers have employed from time immemorial when they have had occasion to wrap up sugar, salt, flour, rice, and a hundred other like articles, using for that purpose two sheets of paper, one laid on top of the other. When two sheets are thus used instead of one, for the purpose of wrapping up an article, the ends of the two sheets are necessarily interfolded practically in the same manner which Peters describes; and the effect of such interfolding is to more "effectually close the ends," and prevent the inner sheet from moving relatively to the outer sheet.

It is urged, however, at great length, and with considerable force, that the demonstrated utility of the Peters carton as a means of packing crackers and preserving them from moisture in damp climates entitles him to favorable consideration and a monopoly of the use of the carton which he has constructed. It is said, in effect, that the great utility of the carton is sufficient evidence of invention. In view of this line of argument we have considered the evidence of utility with some care, and, while it is sufficient to show that the cartons in question do operate to exclude the outer air and moisture to a considerable extent, yet we are by no means satisfied that this result is due to the carton, or to the manner in which the ends of the lining and carton blank are interfolded. The testimony shows that when the carton is fully made up in the manner described in the patent, and filled with crackers, it is then carefully covered with an outer wrapper, which is closely sealed along the edges so as to entirely exclude the outer air. It admits of very little doubt, we think, that this outer cover, which is not mentioned or described in the patent, has as much, if not more, to do with protecting the contents of the box from dampness and dirt as the carton itself. But, even if this were not so, and if the carton possesses all the merit that is claimed for it, its mere utility would not suffice to render it patentable. It sometimes happens that an improvement in a machine or device, which is the result of ordinary mechanical skill, adds much to the utility of the device or machine, but this fact does not render it patentable. If a doubt arises in the consideration of a patented article or device whether the inventive faculty has been exercised, the fact that the article in question has gone into general use, that there is a large demand for it, and that it seems to possess great utility, is entitled to great weight; but when

it is apparent that the inventive faculty has not been exercised, and that nothing more has been accomplished by the alleged inventor than might have been done by an ordinary workman or mechanic acquainted with the art, if his attention had been directed to the subject, a patent, if granted, cannot and ought not to be sustained.   The law to this effect is well settled.   McClain v. Ortmayer, 141 U. S. 419, 427, 428, 12 Sup. Ct. 76, 35 L. Ed. 800;  Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, 13 Sup. Ct. 850, 37 L. Ed. 707;  Fox v. Perkins, 3 C. C. A. 32, 52 Fed. 205, 213;  Dueber Watch Case Mfg. Co. v. Robbins, 21 C. C. A. 198, 75 Fed. 17;  Lovell Mfg. Co. v. Cary, 147 U. S. 623, 635, 13 Sup. Ct. 472, 37 L. Ed. 307;  Falk Mfg. Co. v. Missouri Railroad Co., 43 C. C. A. 240, 103 Fed. 295, 302, and cases there cited.   In the case in hand it is plain, we think, upon a fair consideration of the state of the art at the time the patent in suit was applied for, that Peters' patent is lacking in patentable novelty, and that he is not entitled to a monopoly of the manufacture, use, and sale of the article in question.   Indeed, we think it would be a perversion of the patent law to hold that one who has made no greater advance in the art of manufacturing paper boxes than he appears to have done, is entitled to a patent.   Considering the fact that Peters merely suggested the idea of folding the carton blank and superimposed lining sheet together, or at the same time, so that the two sheets, at the ends, would be interfolded, as always must be the case when any package is wrapped up in two sheets of paper instead of one, we may, with great propriety, apply to the alleged invention the oft-quoted remark of Mr. Justice Bradley in Atlantic Works v. Brady, 107 U. S. 192, 200, 2 Sup. Ct. 225, 231, 27 L. Ed. 438, that:

"The design of the patent law is to reward those who make some substantial discovery or invention which adds to our knowledge and makes a step in advance in the useful arts. * * * It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement and gather its foam in the form of patented monopolies which enable them to lay a heavy tax upon the industry of the country without contributing anything to the real advancement of the arts."

We are of opinion, for the reasons heretofore expressed, that the Peters carton or paper box fails to disclose patentable novelty, and that the decree below ought to be reversed, and the bill dismissed.   It is so ordered.