## HAGGERTY et al. v. RAWLINGS MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. September 25, 1926.)

No. 7317.

**1. Patents ☞62.**

To defeat a patent, proof of prior use by oral testimony must be clear, satisfactory, and beyond a reasonable doubt.

**2. Patents ☞167(2).**

Patents are construed by reference to specifications, including drawings, though such reference may not be had for purpose of expanding claim.

**3. Patents ☞36.**

Commercial success, to be proof of anything, must be confined to the exact thing disclosed by the patent.

**4. Patents ☞328.**

Parol testimony as to prior use *held* sufficient to defeat broad claims urged for Haggerty patent, No. 1,229,947, for athlete's guard.

**5. Patents ☞328.**

Haggerty patent, No. 1,229,947, June 12, 1917, for athlete's guard, *held* not infringed.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Patent infringement suit by Frank Haggerty and another against the Rawlings Manufacturing Company. Decree for defendant, and plaintiffs appeal. Affirmed.

The patent involved is Haggerty patent, No. 1,229,947.

Brayton G. Richards, of Chicago, Ill. (Joshua R. H. Potts, of Chicago, Ill., on the brief), for appellants.

Paul Bakewell, of St. Louis, Mo., for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

KENYON, Circuit Judge. This is an appeal from a judgment and decree of the District Court of the United States for the Eastern District of Missouri, dismissing the bill of appellants for want of equity. The controversy is the usual one arising where infringement of patent is charged. The patent alleged to have been infringed is one for an athlete's guard issued to appellant, Haggerty, and his assignee, Izenstark, on June 12, 1917, upon an application filed January 22, 1917.

The defenses presented were invalidity of the so-called Haggerty patent, and noninfringement.

It was the opinion of the trial court that the alleged prior uses were established by the evidence, and the court, in sustaining the patent, limited it, in view of the prior art, to a very narrow sphere.

Claims 1, 2, 3, and 4 of the Haggerty patent are the ones alleged to be infringed. Claim 1 is as follows:

"A device of the class described comprising a guard arranged to fit against the back of the wearer; guards hingedly connected with the opposite sides of said back guard; hip guards hingedly connected with said side guards and depending therefrom; and means for securing the device about the body of the wearer, substantially as described.

Claims 2, 3, and 4 are substantially the same as claim 1, and the differences or claimed additions are not important here.

The Haggerty invention is claimed to consist of three parts, two being duplicates. One part is a central back guard. The two side guards and hip guards hingedly connected with the side guards constitute the other parts.

It is contended by appellant that the three-part guard of the Haggerty patent was a novelty at the date application was filed for the patent; that there has been pronounced commercial success of the Haggerty guard, and that this must be considered by a court in determining the question of patentable novelty; that the guard has been used by the appellee, and that this is an admission of its utility and should also be considered in determining patentable novelty; that the alleged prior uses relied upon by appellee to defeat the patent rest in the memory of witnesses, and that such testimony is not sufficient to defeat or limit the patent.

It is the claim of appellee that, if the con-

struction of claims 1, 2, 3, or 4 of the Haggerty patent are broad enough to include within their scope the appellee's football trousers, which are claimed to be infringements of the Haggerty patent, such patent is void.

The court found that guards having side, hip, and back pads were old, and that the evidence showed they were used for more than three years before the application of appellants or their grantor for a patent was filed, and that the great weight of the evidence was that spine pads, side pads, and hip pads extending above and below the waist line and hingedly connected together were made by appellee as early as 1914, and were made and used by others as early as 1912.

The court held that prior use was sufficiently established to defeat the broad claims of appellants' patent, so far as this action is concerned, but forecast narrow limits within which the patent might be valid, and refused to declare the same void as lacking novelty, limiting it, however, substantially to the particular manner and means of attaching the spine pad to the lateral side and hip pad, and held that so construed the device of appellee under the so-called Whitley patent of February 14, did not infringe. The court said in its opinion: "Barring the elastic webbing in the waist line (patented by Whitley in February, 1922, as said already) defendant has been putting spine pads, side pads, and hip pads in athletic trousers, substantially as shown in the alleged infringing device, since 1914, and others did this earlier, even, than this date. I think the great weight of the evidence in the case shows this fact conclusively."

Appellants claim that the evidence is not of the character required by the law to show prior use to defeat the patent; urging the rule that such prior use must be established beyond a reasonable doubt, and that the memories of witnesses are not sufficient. Cantrell et al. v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L. Ed. 1017; The Telephone Cases, 126 U. S. 1, 8 S. Ct. 778, 31 L. Ed. 863; The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Adamson v. Gilliland, 242 U. S. 350, 37 S. Ct. 169, 61 L. Ed. 356; H. Mueller Mfg. Co. v. Glauber, 184 F. 609, 619, 106 C. C. A. 613.

[1] The view of this court on that subject is expressed in Grupe Drier & Boiler Co. v. Geiger, Fiske & Koop, 215 F. 110, 114, 131 C. C. A. 418, 422. "The rule is that to defeat a patent by oral testimony of prior use the proof must be clear, satisfactory, and beyond a reasonable doubt. * * * But the stand-

ard is not an impossible one, and each case must be determined upon its own facts. The particular kinds of flue-cleaning devices installed in 1897–98 and 1903–04 would naturally have impressed themselves upon the memory of those who planned and put them in and of those who afterwards used them. The corroboration of the plan of the draughtsman is persuasive. It is not a case of casual observation of a mechanical detail by persons not particularly interested. These and other considerations, including the character of the witnesses and the fact that some of them appear wholly disinterested, have convinced us that a conveyor in the bottom of the draft flue to carry the deposit there into the drier cylinder was not the discovery of the patentee."

The rule contended for by appellants is undoubtedly the one to be applied where the improvement is a complex mechanism, and, as said by the court in Lee v. Upson & Hart Co. et al. (C. C.) 43 F. 670, 671, "if the essence of the invention had been the nice adjustment of parts to produce a result, or if the thing to be done required genius of a superior order, the testimony would have been insufficient"; but the court also points out that less testimony is required where the matter is not such complex mechanism, and in such case it does not require the same amount of evidence to satisfy the court, and says, "The argument of the plaintiff forgets that it requires less testimony to establish a fact which was very likely to have occurred, than to establish an improbable theory." Rochester Coach-Lace Co. v. Schaefer et al. (C. C.) 46 F. 190; Sipp Electric & Machine Co. v. Atwood-Morrison Co., 142 F. 149, 73 C. C. A. 367; Crone v. John J. Gibson Co., 247 F. 503, 506, 160 C. C. A. 13.

The thing done here, at least as to a back pad, was the obvious thing to do for the purpose of meeting similar conditions, and witnesses so testify. There was no complex mechanism involved. Indeed it was an exceedingly simple device. The inherent probability of the truth of the testimony and the lack of any suggestion that the witnesses were guilty of perjury lends much credibility thereto. It appears clearly, overwhelmingly, and satisfactorily from the evidence that the side pads, hip pads, and spine pads in some kind of combination hingedly connected together were made and used long prior to the date of the Haggerty patent and were made by appellee prior thereto. The record discloses a page of appellee's catalogue of 1915, which shows football pants offered for sale with hip and kidney pads in its "No.

13/OK." football trousers. These guards had spine or back pads and side or kidney pads, together with suspended hip pads.

The testimony of witnesses Johnson, O'Shea, Scanlan, and Lesch, which was taken by appellee prior to the trial of the case and introduced by appellant, shows, together with the other evidence, that it was common practice in making football trousers prior to appellants' patent to provide the same with kidney, hip, and spine pads.

[2] Further, as showing the prior art, it appears that one Stewart as early as August, 1914, applied for and secured later a patent for a body protector very similar to the Haggerty athlete's guard. The Stewart and Haggerty patents are alike in that both are connected or fastened to the body of the wearer by a strap or buckle. Both have side parts consisting of kidney pads above and hip pads below. The two side parts are held together at the waist line by two horizontal, elastic straps. The Haggerty patent may be something of an improvement on the Stewart patent. All that Haggerty did, however, was to loosely hang the particular "back guard 7" with its "two nonelastic straps 13 secured at their ends but free at their central portions," and to provide "supplemental elastic straps 15 secured at their ends to the adjoining edges of the back and side guards * * * being looped, as shown, so as to permit of free movements between said guard members." This is what Haggerty disclosed by his patent. As said in Lamb Knit Goods Co. v. Lamb Glove & Mitten Co. et al., 120 F. 267, 269, 56 C. C. A. 547, 549, it is "well settled that the claims of a patent are to be construed by reference to the specifications (of which the drawings form a part), and that such reference may be had, not for the purpose of expanding the claim, but for the purpose of defining it and limiting it to the description of the invention." O. H. Jewell Filter Co. v. Jackson, 140 F. 340, 72 C. C. A. 304; McClain v. Ortmayer, 141 U. S. 419, 12 S. Ct. 76, 35 L. Ed. 800.

The theory of counsel for appellants, as stated in the brief, that the Haggerty patent and its claims are "broadly a guard comprising the three members, namely, a back, two sides, and two hip guards," cannot be sustained without offense to the rule as to proper construction of claims. Further, it reduces the pretended invention to something not disclosed in the Haggerty patent, to wit, the adding of any form or construction of back pad to the athlete's guard disclosed by the Stewart patent. Of course, the athlete's guard or protector of the Stewart patent was part of the prior art with which Haggerty is presumed to be familiar. Fezzey v. Bemis Bro. Bag Co. (C. C. A.) 1 F.(2d) 116. The art is a crowded one, and the application of Haggerty's patent should be restricted to his claim "a device of the class described." Appellants are attempting now to occupy more room in the art than their disclosure would warrant.

[3] We need only refer to the alleged pronounced commercial success of the Haggerty guard. That success, to be proof of anything, must be confined to the exact thing disclosed by the patent. Johnson et al. v. Lambert, 234 F. 886, 148 C. C. A. 484; Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, 13 S. Ct. 850, 37 L. Ed. 707. That padded football trousers are a pronounced success does not of necessity signify that the Haggerty guard is such.

[4] We are satisfied that the prior use is sufficiently shown to defeat the broad claims urged as to appellants' patent, and that, if claims 1, 2, 3, and 4 of the Haggerty patent are broad enough to include within their scope the football trousers of appellee, presented as exhibits in the case, the patent is void.

The court did not determine the question as to the lack of novelty in the patent, but pretermitted the same. It is doubtful if Haggerty invented anything within the meaning of the federal statutes. In the light of the Stewart patent, Haggerty's patent would seem little more of an invention than it would be to add a new pocket to a coat, a new frill to a lady's dress or a new feather to her hat.

In Thompson, Trustee, & Others v. Boisselier & Another, 114 U. S. 1, 11, 5 S. Ct. 1042, 1047 (29 L. Ed. 76) the Supreme Court says: "It is not enough that a thing shall be new, in the sense that in the shape or form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the Constitution and the statute, amount to an invention or discovery."

And the language of the Supreme Court in Atlantic Works v. Brady, 107 U. S. 192, 200, 2 S. Ct. 225, 231 (27 L. Ed. 438), as follows is applicable: "The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate in-

vention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the arts. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith." Slawson v. Grand Street Railroad Co., 107 U. S. 649, 2 S. Ct. 663, 27 L. Ed. 576; Union Biscuit Co. et al. v. Peters, 125 F. 601, 60 C. C. A. 337. [5] This court in Union Biscuit Co. et al. v. Peters, supra, discussed the question of mechanical skill as distinguished from invention, and held that the patent there involved, although for a thing new in its exact form, was void for want of patentable novelty. It would seem that the mere addition to the Stewart athlete's guard of a back or spine pad was such an obvious thing to do that it was a mere matter of mechanical skill as distinguished from invention; that there was no discovery therein—no such creative genius manifested as to rise "to the dignity of invention." Berlin Mills Co. v. Procter &·Gamble Co., 254 U. S. 156, 166, 41 S. Ct. 75, 65 L. Ed. 196; Fezzey v. Bemis Bro. Bag ˚Co. (C. C. A.) 1 F.(2d) 116; Johnson et al. v. Lit Bros., Inc. (C. C. A.) 284 F. 259. However, it may be that the presumption of novelty arising from the action of the Patent Office in granting the patent (Zip Mfg. Co. v. Pusch [C. C. A.] 2 F.[2d] 828; Gandy v. Main Belting Co., 143 U. S. 587, 12 S. Ct. 598, 36 L. Ed. 272), is sufficient to have it within the narrow limits defined by the trial court, viz. the particular manner and means of attaching the spine pad to the lateral side and hip pad. There may be some limited invention in this. Assuredly there was nothing else new in the device of appellants' patent. While indicating our doubt as to there being any patentable novelty whatever in this claimed invention, we are inclined to accept the decision of the trial court holding the patent valid within the particular limitations referred to. So construing the patent, there was no infringement on the part of the appellee.

In the exhibits of football trousers made by appellee and claimed to be infringements of the Haggerty patent, it does not appear that the athlete's guard of the Haggerty patent has been copied. Appellee, as the evidence shows, has been making and selling since 1914 football pants with spine pads, side pads, and hip pads substantially as shown in these alleged infringement devices. It is clearly shown, we·think, that appellee has not made, used, or sold the particular athlete's guard disclosed by the Haggerty patent having the special "back guard 7" with the connections as set forth in said patent,

We think the decision of the trial court was correct, and it is affirmed.