UNITED KINGDOM OPTICAL CO., Limited, et al. v. AMERICAN OPTICAL CO. et al.

No. 2837.

Circuit Court of Appeals, First Circuit.

Jan. 3, 1934.

H. A. Toulmin, Jr., of Dayton, Ohio (H. A. Toulmin, of Dayton, Ohio, and Irwin McD. Garfield and Warren, Garfield, Whiteside & Lamson, all of Boston, Mass., on the brief), for appellants.

Harrison F. Lyman, of Boston, Mass. (Charles Neave, of New York City, and C. E. Hammett, Jr., and Fish, Richardson & Neave, all of Boston, Mass., on the brief), for appellees.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

MORTON, Circuit Judge.

This is a suit to restrain infringement of patent No. 1,729,654 to Watson and Culver for a method of making bifocal lenses. The patent is dated October 1, 1929, on an application filed February 26, 1927. The defendants denied validity and infringement, and counterclaimed against the plaintiffs in respect of certain advertising matter put out by the plaintiffs pending the litigation. In the court below there were findings and a decree for the defendants in the principal suit, viz., that the claims, if so construed as to cover the defendants' method, were void for lack of novelty, and for the defendants against the plaintiffs on the counterclaim, with an injunction against the continuance of objectionable advertising by the plaintiffs. The plaintiffs have appealed on both points. The controverted issues turn largely on questions of fact as to which, as the district judge saw the witnesses, his findings carry much weight and will not be set aside unless plainly wrong.

As to the first point: In making bifocal lenses it is necessary to fuse together along their edges segments of different kinds of glass, having different melting points, and also to fuse the united segments into a larger blank from which the lens is ultimately ground. The patent in suit is for a method, or process, of fusing the two segments into a button which is fused into a blank, and for retaining the segments in position during the operation. The defendants used different means for retaining the position from those shown in the patent; and this phase of the matter need not be gone into.

The patent may be regarded, for present purposes, as dealing with the edges of the segments along which they are fused together. The plaintiffs contend, in substance, that it covers leaving these edges in an unpolished condition, as they come from the grinding operation; and that any fusing of

segments of different kinds of glass having such edges, the segments being held without motion during the operation, infringes the fifth and sixth claims. The defendants contend that the inventive idea of the patent is much narrower; that it is not for fusing rough edges, but for making a difference in the roughness of the edges of the two sorts of glass to be fused, the harder glass being left rougher than the softer; that the theory of the patent is that the microscopic projections left by the grinding are larger on the rougher edge and serve to hasten fusing, bringing it nearer to that of the softer glass which, being left with a smoother edge, is not so hastened. On this point the specifications say:

"This grinding of the crown-glass edges rougher than the flint-glass edges is very important as an aid to the solution of two of applicants' problems in carrying out this invention; viz., that of minimizing the optical prominence in the finished lens of the lines between the major and minor elements, and that of reducing the difference in time between the arrival at welding fusion of flint-glass edges and the crown-glass edges, due to the higher fusion-point of crown-glass." (Page 2, lines 29 to 39.)

This passage is explicit in the defendants' favor; and we do not think it is modified or broadened by the more general language in other parts of the specifications on which the plaintiffs rely. Five of the seven claims refer expressly to difference in the roughness (or polish) of the contacting surfaces which are to be fused together. As to these claims, we may say at once that, there being no evidence, and no contention, that the defendants ever made any such difference in the edges, infringement is not made out on any view of the case.

The other two claims, the fifth and sixth, are not so limited, and are the ones principally relied on by the plaintiffs. The fifth which is the broader reads as follows:

(5) "In a method of melting segments of glass of different indices of refraction having different melting points, imparting to said segments roughened edges, joining said edges, and fusing said segments so joined on said edges while supporting said segments without movement."

This claim in terms covers fusing together segments of different kinds of glass along edges roughened by grinding. As has been said, it is questionable whether this was the invention of the patent, but for reasons here-after stated it is unnecessary to decide this point. The defendants contend that, if the fifth and sixth claims be literally construed, as the plaintiffs contend they should be, they are void for lack of patentable novelty. On this issue several witnesses were called by the defendants. They testified that in 1915 and 1916 the American Optical Company practiced fusing for optical uses segments of glass, and in one instance of different kinds of glass, on edges roughened by grinding. Contemporaneous public advertisements of glasses said to have been so made were put in evidence. The witnesses were not contradicted or impeached; and no facts were shown which cast doubt upon their statements. Indeed, the probability may fairly be said to be their way. That the defendants made fused lenses at that time cannot be doubted in view of the advertising, which expressly stated that the lenses were fused. Polishing edges which were to be fused involved an additional operation and higher costs. It seems likely, as the defendants' witnesses testified, that efforts would be made to fuse in the rough-ground state without polishing, and that such efforts would be successful. See Rochester Coach Lace Co. v. Schaefer et al. (C. C.) 46 F. 190. There was nothing in the way of contemporaneous written evidence as to the manner in which the edges to be fused were treated, whether rough-ground or polished. The district judge was convinced that the defendants' witnesses were telling the truth; and he found the facts accordingly. No persuasive reasons are suggested by the plaintiffs to show that this finding was wrong, or that the testimony relied on by the district judge was subject to doubts and infirmities which he failed to recognize.

But it is argued that the evidence of prior use did not meet the standard required by Emerson & Norris Co. v. Simpson, 202 F. 747, 750 (C. C. A. 1), in that there were no "concrete, visible, cotemporaneous proofs [of anticipation] which speak for themselves"; and that "something more than oral testimony, even of the highest character, is required where there has been a considerable lapse of time." This rule is basically sound; but it ought not to be taken too literally, nor pressed beyond reason, nor made into an artificial convention standing in the way of obvious truth. In the extreme form in which it was stated by Judge Putnam, it has never been fully approved by the Supreme Court. In Eibel Co. v. Paper Co., 261 U. S. 45, 60, 43 S. Ct. 322, 327, 67 L. Ed. 523, it was

said, "That evidence to prove prior discovery must be clear and satisfactory," Taft, C. J.; in the Barbed Wire Patent Case, 143 U. S. 275, 284, 12 S. Ct. 443, 447, 36 L. Ed. 154, that "the proof shall be clear, satisfactory, and beyond a reasonable doubt," Brown, J.; and in Deering v. Winona Harvester Works, 155 U. S. 286, 300, 15 S. Ct. 118, 123, 39 L. Ed. 153, that "oral testimony, unsupported by patents or exhibits, tending to show prior use of a device regularly patented, is, in the nature of the case, open to grave suspicion," Brown, J. In other Circuits the rule has not been stated so rigidly. "There is, however, no hard and fast rule as to this" (the character and amount of evidence to prove anticipation), Gray, J.; Sipp Electric Co. v. Atwood-Morrison Co., 142 F. 149, 154 (C. C. A. 3). "The rule is that to defeat a patent by oral testimony of prior use the proof must be clear, satisfactory, and beyond a reasonable doubt. * * * But the standard is not an impossible one, and each case must be determined upon its own facts," Hook, J.; Grupe Drier & Boiler Co. v. Geiger et al. (C. C. A.) 215 F. 110, at page 114. See, too, Haggerty v. Rawlings Mfg. Co., 14 F.(2d) 928 (C. C. A. 8); Clark Mfg. Co. v. Tablet & Ticket Co., 18 F.(2d) 91 (C. C. A. 7).

■ Moreover, as has been pointed out, there was in this case contemporaneous documentary evidence which showed beyond any doubt that in 1915 and 1916 the defendants were making fused glasses of different kinds of glass. The rule in the Emerson Case has never been understood to require that every essential step in the anticipation must be proved by contemporaneous evidence. It seems to us sufficient under that decision if proof of the kind there specified establishes anticipation to such a degree that oral testimony may safely be relied on to complete it. The prior patent to Courmettes of 1916 covered fused or "welded" segments, of glass having different refractive indices, with unpolished edges. The Courmettes specifications, as originally drawn, prescribed that the contacting edges of the segments to be fused should be "ground or polished." Courmettes endeavored to amend the specifications by having these words struck out, saying, "Practice has shown that the welding heat is sufficient to polish the flat edges referred to." In our opinion the finding of the district judge, that the patent, if so construed as to cover the defendants' method, was void for lack of novelty, is not shown to be either clearly wrong on the evidence, or unsupported by the requisite kind of evidence. It follows that the decree dismissing the bill was right and should be affirmed.

■ As to the injunction against the plaintiffs' advertising matter: The advertisement by the plaintiffs of which the defendants complain clearly went beyond what was permissible. In effect, it charged that the defendants did not stand behind dealers who sold their goods, as they advertised that they would do, and did do. We have no doubt that such a complaint, though arising after the litigation had started, could be made the subject of a counterclaim. The point has been so decided in two Circuits. Peters Co. v. MacDonald, 61 F.(2d) 1031 (C. C. A. 2); Art Metal Works v. Abraham & Straus, 62 F.(2d) 79 (C. C. A. 2); Rollman Mfg. Co. v. Universal Hardware Works, 238 F. 568 (C. C. A. 3). We prefer to rest our decision on this point on the broad ground taken in the case last cited, viz., that a court of equity has control of the parties before it, to prevent them from misusing or misrepresenting its orders or decrees, and from using improperly the existence of the litigation to obtain unfair business advantage over adversaries. Such conduct is an abuse of the court proceedings which approaches contempt, and in extreme cases, of which we do not mean to intimate that this is one, might amount to contempt.

The decree of the District Court on this point also was right and is affirmed.

The decree of the District Court is affirmed with costs to the appellees in this court.