**A. J. INDUSTRIES, INC., Plaintiff-Appellant,**

v.

**The DAYTON STEEL FOUNDRY COMPANY, Defendant-Appellee.**

Nos. 17614, 17615.

United States Court of Appeals Sixth Circuit.

May 6, 1968.

James B. Kinzer, Jr., Chicago, Ill., and John W. Melville, Cincinnati, Ohio, for A. J. Industries, Inc., Yungblut, Melville, Strasser & Foster, Cincinnati, Ohio, and George H. Wallace, Chicago, Ill., on the brief.

Jack L. Renner, Akron, Ohio, for The Dayton Steel Foundry Co., Mack D. Cook, II, Hamilton & Cook, Akron, Ohio, J. Robert Donnelly, Iddings, Jeffrey & Donnelly, Dayton, Ohio, on the brief.

Before PHILLIPS, PECK and McCREE, Circuit Judges.

JOHN W. PECK, Circuit Judge.

A. J. Industries, Inc. (herein "plaintiff") brought suit against The Dayton Steel Foundry Company (herein "defendant") for infringement of Ward Patent No. 2,841,414, which plaintiff

owned. Defendant denied infringement in its answer and counter-claimed that the patent in suit was invalid. Only two of the twelve claims to the patent, claims 7 and 8, were tried to the District Court which held the claims valid and not infringed. Both parties have appealed from that decision.

The Ward patent in suit, captioned "Anti-Brake Hop Structure for Wheeled Vehicles," pertains to a spring suspension system for a vehicle, generally a truck trailer, having tandem axles. More particularly, claims 7 and 8 pertain to a tandem suspension system having the adjacent ends of two elongated springs on each side of the vehicle connected to the frame through an equalizer, the function of which is to distribute loads back and forth between the springs. As stated in the patent specification, the primary improvements contemplated by the invention disclosed are "enhanced braking effectiveness, the elimination of the phenomenon known in the trucking industry as 'brake hopping,' and the improvement of the riding characteristics of the trailer, as well as the tractor, during braking operations." The evidence shows that all three objectives are realized by the elimination of brake hopping.

The phenomenon known as brake hopping was described by Ward in the specification to the patent in suit as follows:

"[B]rake hop is experienced primarily with unloaded or lightly loaded trailers when a sudden or emergency braking operation is in progress, and the phenomena is characterized primarily by rapid and extremely violent up and down oscillation of either one or both of the axles of the tandem. In what is probably its most common form, this phenomena primarily involves or is exhibited in a readily apparent manner in vibration or oscillation of the front axle, and the vibration is often so great that in each oscillation the wheels of this axle are lifted from the road in an appreciable amount and then returned to road contact with great force or impact."

As the record shows, it is generally recognized that the extent or intensity of axle oscillation depends on many variables, such as the road surface, the braking intensity and the weight of the trailer.

With respect to the equalized semi-elliptic spring type of suspensions to which the Ward patent pertains, Ward in effect attributed what is known as axle wind-up as the cause of brake hop. His concept of the cause of brake hop may fairly be summarized as follows: when the wheels are locked to the tandem axles during braking, the tire-to-ground friction tends to rotate the axles in a forward rotational direction. The springs of the suspension, one of which is attached to and support each end of the axles, are caused to cant in such a manner that the rear end of the springs attached to the front axle move upwardly and the front end of the springs attached to the rear axle move downwardly. This spring movement is not impeded by the equalizer and the net effect is that the front axle tends to be lifted from the pavement. Thereafter because the weight of the rear portion of the trailer is shifted, or tends to shift, to the rear axle, and because of the reduction or total elimination of friction between the tires attached to the front axle and the pavement, the front wheels tend to return to their normal, load-bearing position in contact with the roadway, whereupon the cycle starts over again. It is the rapid repetition of this cycle that creates the brake hop.

In the prior art devices disclosed in the patent in suit, the tandem axles are pulled along with the trailer by torque rods attached to the axles through forwardly extending arms secured to each end of the axles. In these prior art structures, the rear end of each torque rod is attached to an arm at a point forwardly and slightly above the center-line, or axis, of the related axle, the front end of the torque rod being attached to the frame through brackets forwardly of the related axle. Ward's invention consisted of the placement of these torque rods "in a dif-

ferent and highly advantageous relationship between the frame and the respective axles." As stated in plaintiff's brief, "Ward contrapositioned the connection for the rear of the torque rods from a position above the axle to a position below the axle. This change was Ward's invention." It is claimed that by changing the position of the rear end of the torque rods as Ward did, the forward inertia force of the vehicle is harnessed as a counterrotative force on the axles, thus precluding brake hop. A drawing accompanying the Ward patent and depicting an embodiment of the claimed invention is set forth below:

July 1, 1958 J. C. WARD 2,841,414

ANTI-BRAKE-HOP STRUCTURES FOR WHEELED VEHICLES

Filed March 2, 1954 3 Sheets–Sheet 3

In comparison to the prior art devices where the rear of the torque rods are connected to the axles through a forwardly extending arm at a point slightly above the axis of the related axle, the torque rods in the accused devices are attached to the axles through a forwardly extending arm at a point below the axis of the related axle, but not below the axle itself.

With reference to the issue of the validity of the patent in suit, defendant contends that the patented suspensions lack novelty under 35 U.S.C. § 102, and invention under 35 U.S.C. § 103.

■ Under section 102(a), novelty does not exist if the patented device has been anticipated by a prior device, whether patented or not; that is, novelty is lacking if all the elements of the patent, or their equivalents, are found in a single prior art structure where they do substantially the same work in the same way. Aluminum Co. of America v. Sperry Products Inc., 285 F.2d 911 (6th Cir. 1960), cert. denied, 368 U.S. 890, 82 S.Ct. 142, 7 L.Ed.2d 87 (1961); Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co., 332 F.2d 406 (6th Cir.), cert. denied, 379 U.S. 888, 85 S.Ct. 160, 13 L.Ed.2d 93 (1964); Marasco v. Compo Shoe Machinery Corp., 325 F.2d 695 (1st Cir. 1963), cert. denied, 377 U.S. 924, 84 S.Ct. 1223, 12 L.Ed.2d 216 (1964). In order to negate novelty, the prior device must have been reduced to use (National Latex Products Co. v. Sun Rubber Co., 274 F.2d 224 (6th Cir. 1959), cert. denied, 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed.2d 1022 (1960)), and this use must have been a public use. Monroe Auto Equip. Co. v. Heckethorn Mfg. & Supply Co., supra.

Defendant offered evidence tending to prove the existence and use of four separ-

ate prior art devices which allegedly anticipated the patent in suit. With respect to the suspension on the so-called Crawford Oil trailer (the Crawford Oil Company of Humansville, Missouri, owned this trailer at one time), one of the principal prior art structures relied upon by defendant, both parties agree that this suspension as depicted in certain photographs in evidence is "analogous and identical to" the accused suspensions. It is thus defendant's position that since the accused device is drawn upon a prior art structure, the claims in dispute are invalid as having been anticipated. The point of contention is whether defendant carried its burden of proving the existence and use of the Crawford Oil suspension prior to the application for the Ward patent by the degree of evidence required. As to the alleged four prior uses, the District Court found generally that "none of [the] * * * witnesses testified, to the satisfaction of the Court, to structures which would constitute prior use and thereby invalidate the patent in suit."

The evidence shows that the Crawford Oil trailer was acquired by the Crawford Oil Company around 1946. In 1948 or 1949, the trailer was converted by the Springfield Body & Trailer Company from a 4000 gallon capacity unit into one capable of holding slightly over 5000 gallons. The single axle suspension was converted to a tandem axle suspension which, according to defendant, is still on the trailer. Around 1960 or 1961, it was acquired in trade by Joplin Trailers, Incorporated, when the Crawford Oil Company purchased a new trailer from that company. Approximately eighteen months later the trailer was sold by Joplin Trailers to an asphalt company in Pittsburg, Kansas, which subsequently sold it to defendant.

Defendant introduced photographs of the Crawford Oil trailer and suspension taken both while it was owned by Joplin Trailer and after it was acquired by defendant. Both sets of photographs show the trailer to have an equalized suspension system of the type set forth in the Ward patent, with torque rods connected to the axles at points below the axis of the axles. Mr. Jeff Frazier, the owner of Joplin Trailers, readily recognized the suspension depicted in the later set of photographs as "the suspension that was on the trailer."

To show that the suspension unit presently on the Crawford Oil trailer, which is the one allegedly depicted in the photographs in evidence, was the one installed in 1948 or 1949, defendant offered the testimony of three men who were employees of the Springfield Body & Trailer Company at the time the trailer was converted, and the testimony of each of the owners of the trailer from 1946 until defendant obtained it. The substance of the testimony of these three employees was that the Springfield Body & Trailer Company made several experimental suspension units in the late 1940's in which the rear of the torque rods were connected to the related axles at points below the axis of the axles. The testimony of each of the employees as to the events and circumstances surrounding the conversion of trailers such as the Crawford Oil trailer was quite detailed and consistent with that of the others. The connection of the torque rods to the axles at points below the center line was specifically recalled because of the problems encountered in placing them in such a position, and a Mr. Long, the foreman of Springfield Body & Trailer Company who supervised the modification and installation of the suspension system on the Crawford Oil trailer in 1948 or 1949, recalled the particular suspension depicted in certain photographs because it was the first one made that way, and because it had been an experiment.

The testimony of Mr. Shelby Crawford, partner of the Crawford Oil Company and corroborating contemporaneous documentary evidence established that the trailer in question had been converted from a single axle vehicle to a tandem axle trailer in September, 1948. When asked whether there had been any major changes to the tanker or suspension

system on the tanker during the time he owned it, other than the conversion in 1948, Mr. Crawford replied, "None. None whatsoever." Mr. Crawford further testified that the trailer had been traded to Joplin Trailer, Incorporated, around 1961. This testimony was corroborated by that of Mr. Jeff Frazier. The latter witness also stated that no work had been done on the trailer during the time that it was in his possession: "[W]e sold it * * * just as we received it from the Crawford Oil Company."

Finally, Mr. George Fox, a past president of Reynolds Division of the plaintiff corporation, testified that the tandem suspension shown in the photographs of the Crawford Oil trailer taken after it was acquired by defendant, was "apparrently the type unit, the first type of Frazier tandem, made before we started manufacturing them." He further stated that this type unit was made around 1948, which coincides with the date of the conversion of the trailer given by the other witnesses.

 Defendant has the burden of proving anticipation by evidence which is strong, clear and convincing. Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049 (1936); Rooted Hair Inc. v. Ideal Toy Corp., 329 F.2d 761 (2d Cir.), cert. denied, 379 U.S. 831, 85 S.Ct. 63, 13 L.Ed.2d 40 (1964); cf. Radio Corp. of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 54 S.Ct. 752, 78 L.Ed. 1453 (1934). While it is true that oral testimony alone, unsupported by any contemporaneous documents, is not the best type of evidence to show anticipation by a prior art device, the use of such evidence is not necessarily fatal to defendant's case. Jones Knitting Corp. v. Morgan, 361 F.2d 451 (3rd Cir. 1966); United Kingdom Optical Co. v. American Optical Co., 68 F.2d 637 (1st Cir. 1934). On the record in this case, we believe that defendant must prevail on the issue of anticipation raised by the Crawford Oil trailer. The evidence regarding this trailer taken as a whole convincingly establishes the existence and use of a sus-

pension system which is identical to the accused device prior to the conception of Ward's invention.

The vast majority, if not all, of the witnesses who testified as to the prior art Crawford Oil trailer and suspension system had no pecuniary interest in the outcome of the suit. Cf. Corona Cord Tire Co. v. Donvan Chemical Corp., 276 U.S. 358, 382, 48 S.Ct. 380 (1928). With respect to the structure of the suspension on this trailer prior to the conception of the Ward invention, the testimony of these witnesses was sufficiently detailed as to evidence a familiarity of the subject matter. As noted above, this testimony was neither contradicted, nor otherwise impeached. Indeed, there was documentary evidence to support the testimony concerning the date of the conversion of the trailer. Also, aside from the evidence by the three employees who either stated that they had worked on the Crawford Oil trailer or one just like it, there are photographs of a suspension unit which, according to the testimony of two of the prior owners, Mr. Crawford and Mr. Jeff Frazier, could only have been installed in 1948. "Furthermore, the nature of the subject matter, in view of the well known prior art, is not such as to suggest in any way the improbability of the * * * prior use." Rokap Corp. v. Lamm, 10 F.Supp. 219, 224 (D. Md.1935), aff'd 85 F.2d 873 (4th Cir. 1936); see also Haggerty v. Rawlings Mfg. Co., 14 F.2d 928 (8th Cir. 1926).

Plaintiff's contention that there is a "clear and convincing hiatus regarding who was doing what, where, and when, with the Crawford Oil trailer after it first got out of the hands of [Mr.] * * * Crawford" is easily disspelled upon reading the few isolated statements in support of such argument in context with the remaining portions of the record from which they are taken.

 The fact that the testimony of five of nine witnesses relating to the Crawford Oil trailer was offered by deposition does not deprive this evidence of probative weight. It does, however, militate against the conclusiveness gen-

erally given findings made by the District Court under Rule 52, F.R.Civ.P., since the trial judge had no opportunity to observe the witnesses. See Seagrave Corp. v. Mount, 212 F.2d 389 (6th Cir. 1954); Carter Oil Co. v. McQuigg, 112 F.2d 275 (7th Cir. 1940). In accordance with the foregoing, it is here determined that finding number 20 is clearly erroneous, and that defendant has carried its burden of proving that claims 7 and 8 of the Ward patent lack novelty under 35 U.S.C. § 102. In light of this determination, the remaining issues raised by the parties on appeal need not be considered.

The judgment of the District Court dismissing the complaint is affirmed on the ground that the claims in suit are invalid for lack of novelty.